JEANNE M. URBANSKI ET AL. *v.* JOSEPH HALPERIN

APPELLATE DIVISION OF THE COURT OF COMMON PLEAS

FILE No. CV 15-701-15046

Argued February 6—decided April 30, 1973

*Frederick W. Krug,* of Waterbury, for the appellant (defendant).

*Nicholas E. DeNigris,* of New Britain, for the appellees (plaintiffs).

SPONZO, J. In this action, brought in two counts, judgment was entered on the first count in favor of the plaintiffs in the amount of $2060.57 and on the second count in favor of the plaintiffs in that a promissory note executed by the plaintiffs in favor of the defendant was declared null and void and ordered canceled.

The facts in this case may be summarized as follows: On March 11, 1969, the named plaintiff and the defendant signed a listing agreement wherein the exclusive right to sell the Rose Manor convalescent hospital was given to the defendant for a period of ninety days. In this listing it was stipulated that the property was "to be sold for the sum of $62,000 . . . or upon terms and conditions other than herein set forth." In return for such a sale, the named plaintiff agreed to pay to the defendant a brokerage commission of 10 percent of the selling price. On April 4, 1969, the defendant prepared an agreement whereby Walter Campbell agreed to purchase the property for $57,000 subject to several

conditions, one of which was "sale subject to State approval." This agreement was signed by the defendant, Joseph Halperin, as salesman, by Walter Campbell, as purchaser, and by Henry J. Urbanski, one of the plaintiffs, as seller. After several efforts to secure state approval proved unsuccessful, a closing was held on May 5, 1969. Present at the closing were the sellers, the purchaser and the defendant agent, together with their attorneys. Several minor changes were made: namely, the seller was listed as Rose Manor Convalescent Home, Inc., and the buyer as Diane E. Campbell. Although moneys were transferred in accordance with the terms of the agreement dated April 4, 1969, the transaction was subject to one important condition, namely, "in the event the said buyer, Rose Manor Convalescent Home, Inc., is unable to obtain a license to operate the Convalescent Home above sold within the period of 60 days, then and in that event this contract shall be null and void and all payments made therein shall be returned to the respective parties and all assets shall be retransferred to the seller." After several more diligent efforts to obtain state approval proved fruitless, the parties declared the contract to be null and void, moneys were returned to the buyer, and all assets were retransferred to the seller. At the closing held on May 5, 1969, the seller paid the defendant a commission of $5700 as follows: retention of the cash deposit of $2000 and execution of a promissory note in the amount of $3700.

In one of his assignments of error, the defendant claims that his motion for judgment on the pleadings should not have been denied. It is not clear when this motion was addressed to the court. In his brief, the defendant indicates that the motion was made on completion of the plaintiffs' case. The memorandum of decision of the court indicates that the motion was made on completion of the trial. In

either case, the motion was properly denied by the court. In Stephenson, Connecticut Civil Procedure (2d Ed.) § 120, it is indicated that this motion is relatively new in Connecticut and must be made prior to trial. It has a limited utility to determine the legal sufficiency of the pleadings and must be filed after the pleadings are closed but prior to trial.

The principal assignment of error appears to be that the complaint does not warrant the judgment in favor of the plaintiffs in that the complaint fails to state that the defendant has failed to perform any duty owing to the plaintiffs. Although the complaint could have been drafted more in detail, it does spell out a cause of action to sustain the judgment of the court. It refers to the contract or agreement between the plaintiffs and the defendant, namely, the listing agreement dated March 11, 1969; then it alleges the agreement of sale dated April 4, 1969. The basis for the payment of the brokerage commission to the defendant agent must be found in the agreement of sale together with the listing agreement. Reference is made in the complaint to a memorandum dated May 5, 1969, signed by the plaintiff sellers and the purchaser at the time of the closing of the sale.

It is well settled in this state that a broker is entitled to a commission when his efforts have resulted in procuring a customer who is ready, able and willing to buy on the terms and conditions prescribed or agreed to by the seller. *Martino* v. *Palladino,* 143 Conn. 547, 548. A broker has fully performed his task when he brings the parties to an enforceable agreement. *Walsh* v. *Turlick,* 164 Conn. 75, 80; *Meagher* v. *Reeney,* 96 Conn. 116. In the present case, the listing agreement provided that the property be sold for "$62,000 or any lesser sum or upon terms and conditions other than

herein set forth." The agreement of sale contains the condition "sale subject to State approval." Although a closing took place on May 5, 1969, it was concluded in the presence of the plaintiffs and the purchaser, their attorneys and the defendant. The closing was conditional in that it provided for a retransfer in the event a license could not be obtained. At no time did the defendant agent fully perform his task by bringing the sellers and the buyer to an enforceable agreement. The defendant fallaciously contends that he was not a party to the memorandum signed on May 5, 1969, by the sellers and the buyer. Although he was present at the closing and knew of the contents of the memorandum, he was not a necessary party to it. The simple fact is that the defendant did not bring the sellers and the buyer to an enforceable agreement.

The defendant further contends that the trial court erred in allowing the introduction of evidence in violation of the parol evidence rule. This evidence involves the introduction of the memorandum dated May 5, 1969, as well as other evidence to explain the meaning of the term "subject to State approval." "It is, of course, fundamental, as a matter of substantive law, that the terms of a written contract which is intended by the parties to set forth their entire agreement may not be varied by parol evidence. . . . It is equally fundamental, however, that when the words used in a written contract are uncertain or ambiguous, parol evidence of conversations between the parties or other circumstances antedating the contract may be used as an aid in the interpretation of the contract, that is, in the determination of what was the intent of the parties which was expressed by the written words." *Maier* v. *Arsenault*, 140 Conn. 364, 367–68. We feel the present case is conducive to this type of evidence and no error was committed. The intention of the parties to a contract

is to be determined from the language used, interpreted in the light of the situation of the parties and the circumstances connected with the transaction. *Grote* v. *A. C. Hine Co.,* 148 Conn. 283, 286.

We conclude that the court was not in error in finding that the brokerage fee was conditioned on the state department of health's approval of the transfer and that there was no such approval despite the reasonable efforts of all parties to secure it. In compliance with the obligation of the memorandum of May 5, 1969, the property was retransferred by the purchaser to the plaintiffs. The judgment of the court is amply supported by the evidence.

Since judgment was rendered in favor of the plaintiffs on the second count in that the promissory note was declared null and void and that it was ordered returned to the plaintiffs for cancelation, this in effect disposes of the defendant's assignment of error relative to the counterclaim.

There is no error.

In this opinion MISSAL and HAMILL, Js., concurred.